## SPRINGDALE SCHOOL DISTRICT NO. 50 OF WASHINGTON COUNTY, Appellant,

v.

Sherry GRACE, a Minor, and Albert and JoAnn Grace, Individually and as Parents of Sherry Grace; Arkansas State Department of Education; State Board of Education; Wayne Hartsfield as Chairman of the State Board of Education; Mrs. James W. Chestnutt, Jim Dupree, T. C. Cogbill, Jr., Mrs. Alice L. Preston, Harry A. Haines, Dr. Harry P. McDonald, Robert L. Newton and Walter Turnbow as Members of the State Board of Education; Don R. Roberts, Director of the Department of Education, Appellees.

No. 80–1777.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1981.

Decided Aug. 7, 1981.

As Amended Oct. 2, 1981.

---

James M. Roy, Jr., argued, Blair, Cypert, Waters & Roy, Springdale, Ark., for plaintiff-appellant.

Stephen M. Sharum, argued, Fort Smith, Ark., for defendants-appellees Sherry, Albert and JoAnn Grace.

Steve Clark, Atty. Gen. by Nelwyn Davis, Asst. Atty. Gen., Little Rock, Ark., for defendant-appellee Arkansas Dept. of Ed.

Sheryl Dicker, Developmental Disabilities Law Project, Legal Services of Ark., Little Rock, Ark., amicus curiae.

Seymour DuBow, Marc P. Charmatz, Washington, D. C., for amicus curiae Nat. Ass'n for the Deaf and Gallaudet College; Sheila Conlon argued, Robin Post, Legal Assistants.

Before HEANEY and HENLEY, Circuit Judges, and NICHOL,[*] Senior District Judge.

NICHOL, Senior District Judge.

This is an appeal by the plaintiff-appellant, Springdale School District # 50 of Washington County (Springdale School), from the judgment of the district court[1] in favor of the defendant-appellees, Sherry Grace and her parents, the Arkansas State Department of Education and its director, and the State Board of Education and its members. The district court found that under the provisions of the Education for All Handicapped Children Act, 20 U.S.C. sections 1401–1461 (1970) (Act), the Springdale School could provide Sherry Grace with a free appropriate education. Based upon this finding the district court affirmed the decision of the Arkansas Department of Education with respect to the Individualized Education Program (IEP) developed for the 1979–80 school year for Sherry Grace. We affirm.

The facts giving rise to the present controversy are well set out by the district court opinion. *Springdale School Dist. v. Grace*, 494 F.Supp. 266 (W.D.Ark.1980). Sherry Grace is an eleven year old girl who is profoundly and prelingually deaf, having either been born deaf or lost her hearing before she developed speech. She has a 95% loss of hearing which renders her completely deaf for all purposes.

Sherry received no formal education or training in communication until, at the age of four, she was enrolled in a special program for children with hearing impairments at Bates Elementary School in Fayetteville, Arkansas. Since the children in this program retain some hearing they are orally instructed. A person like Sherry who is profoundly deaf can only visually receive instructions. As the district court found, "(I)f one is profoundly and prelingually deaf, he lacks the concept of language and must not only receive visual instruction, but also must be taught the most rudimentary matters concerning language." *Springdale School Dist. v. Grace, supra* at 267. The Bates program for hearing impaired children proved inadequate to meet Sherry's needs, and although in the program for two years Sherry made little or no progress. When she left the Bates program Sherry's language level was that of a child of two years and two months.

When Sherry was six years old her parents moved to Little Rock, Arkansas, and there enrolled Sherry in the Arkansas School for the Deaf as a day student. Sherry attended the School for the Deaf for three years. The school employs the total

* Fred J. Nichol, Senior District Judge, District of South Dakota, sitting by designation.

1. The Honorable Paul X Williams, District Judge for the Western District of Arkansas.

communication system.[2] While there she progressed from having a language level of a two year old to being able to read at the second grade level. Since she was able to communicate with others and participate in the life of the school, her confidence and social ability also developed.

After three years in Little Rock, Sherry's parents, over the protests of Sherry's teacher, took Sherry out of the School for the Deaf and moved back to Springdale, Arkansas. There they enrolled Sherry in the fourth grade at the Springdale School.

After testing Sherry and consulting with her parents the Springdale School formulated an IEP for Sherry. The IEP noted that Sherry should be taught by a certified teacher of the deaf who employs total communication. Sherry's lack of the skills of the average fourth grader in reading, spelling and arithmetic, and her below level general knowledge prompted the Springdale School in the IEP to state that the Arkansas School for the Deaf was the proper school to meet Sherry's unique needs.

Although the Graces otherwise agreed with the Springdale School's assessment of Sherry's needs, they disagreed with that portion of the IEP which stated that the School for the Deaf was the proper school for Sherry. Under the provisions of the Act a temporary IEP was formulated allowing for Sherry to remain at the Springdale School while her parents sought review of the disputed portion of the IEP. *See* 20 U.S.C. section 1415 for procedural safeguards. After proper notice and pre-hearing conferences a due process hearing was held on November 7, 1979. The hearing officer reversed the disputed portion of the IEP holding that the Springdale School was wrong and that Sherry could receive an appropriate education at the Springdale School. The Springdale School appealed to the Coordinator, Department of Education Special Education Section, who affirmed the decision of the hearing officer. Upon affirmance, in January, 1980, a full-time certified teacher of the deaf was provided for Sherry.

In February, 1980, the Springdale School initiated this action in district court pursuant to section 1415(e)(2) of the Act seeking review of the appeals officer's decision that Sherry be educated at the Springdale School and not sent to the School for the Deaf. The district court initially found that the Arkansas School for the Deaf could provide Sherry with the *best free education. Springdale School Dist. v. Grace, supra* at 271. The court, however, went on to hold that the Act requires simply that the State, through its local educational district, provide each handicapped child with a *free, appropriate education. Id.* at 272. The court then held that, under the standard set forth in the Act, a preponderance of the evidence proved that the Springdale School could provide Sherry with an appropriate education. The court also found that the Springdale School satisfies the requirements of mainstreaming found in the Act. 20 U.S.C. sections 1412(5)(B) and 1414(a)(1)(C)(iv). *Id.* at 273. Finally, the district court granted the Grace's motion for an injunction forcing the Springdale School to provide Sherry with a certified teacher of the deaf for the 1980–81 term only. The court denied the Grace's request for attorney fees.

The Springdale School filed this timely appeal. Three issues are raised for consideration by the Court:

1. Whether the district court's ruling that Sherry could be appropriately educated at the Springdale School as opposed to the School for the Deaf is an erroneous interpretation of the law and contrary to the Act and/or Arkansas law?

2. Whether the district court's finding that the Springdale School could provide Sherry an appropriate education is clearly erroneous?

3. Whether the district court erred in holding that it had no jurisdiction to consider the Arkansas law?

The Act requires that Sherry be provided with a free appropriate education. 20

---

**2.** The total communication system is a method of visual communication encompassing signing, fingerspelling, visual cues, touching and mouthing.

U.S.C. section 1412.[3] In order to determine what is appropriate to meet the handicapped child's needs the Act requires that an IEP be developed at least annually for the child. 20 U.S.C. section 1414(a)(5).[4] It is the 1979–80 IEP that is at issue here.

It is evident from the well reasoned opinion of the district court that the question of what educational facility is appropriate for Sherry was carefully considered and analyzed. The district court found that the School for the Deaf would provide Sherry with the *best* education. In reaching this conclusion the court noted that the most important thing for Sherry at this stage of life was to learn language skills and that the School for the Deaf is the best place for that purpose. The School for the Deaf would also provide Sherry with proper role models since many of the people employed there are themselves profoundly deaf. Further, Sherry would be able to practice total communication in school as well as in many extra-curricular activities such as Girl Scouts.

■ The district court, although convinced that the best place for Sherry is the School for the Deaf, correctly followed the Act's requirements when it determined that it was not the State's duty to provide the *best* education, but instead states are required to provide an *appropriate* education.

A definitive answer to what constitutes an appropriate education is lacking in the Act and the regulations promulgated thereunder.[5] Therefore, the courts, in reviewing claims brought under the Act have attempted to establish standards for determining what is an appropriate education. The results are far short of uniform. They run a broad spectrum. *Kruelle v. Biggs*, 489 F.Supp. 169 (D.Del.1980) (maximization of learning potential); *Rowley v. Bd. of Ed. of Hendrick Hudson Cent. S. D.*, 483 F.Supp. 528 (S.D.N.Y.1980) (full potential commensurate with opportunity provided to non-handicapped children)[6]; *DeWalt v. Burkholder*, 3 E.H.L.R. 551:550 (E.D.Va.1980) (most appropriate); *Armstrong v. Kline*, 476 F.Supp. 583 (E.D.Pa.1979) (sufficient to make handicapped person independent and self-sufficient).

■ The district court adopted, and we affirm the standard set forth in *Rowley v. Bd. of Ed. of Hendrick Hudson Cent. S.D.*, supra at 534:

An 'appropriate education' could mean an 'adequate' education—that is, an education substantial enough to facilitate a child's progress from one grade to another and to enable him or her to earn a high school diploma. An 'appropriate education' could also mean one which enables the handicapped child to achieve his or her full potential. Between those two extremes, however, is a standard which I conclude is more in keeping with the regulations, with the Equal Protection decisions which motivated the passage of the Act, and with common sense. This standard would require that each handicapped child be given the opportunity to achieve his full potential commensurate with the opportunity provided to other children.

3. Section 1412 of the Act provides that "(I)n order to qualify for assistance under this subchapter in any fiscal year, a State shall demonstrate to the Commissioner that the following conditions are met:

(1) The State has in effect a policy that assures all handicapped children the right to a free appropriate public education. . . . "

4. Section 1414(a)(5) provides that local educational units make application to the State educational agency. "Such application shall—

(5) provide assurances that the local educational agency . . . will establish, or revise, whichever is appropriate, an individualized education program for each handicapped child at the beginning of each school year and will then review and, if appropriate revise, its provisions periodically, but not less than annually. . . ."

5. See 45 C.F.R. sections 121a.340–49, 121a.4, 121a.5, 121a.513, 121a.550–551 (1979) for the regulations promulgated under the Act. The regulations relevant to this case are cited in full in the district court's opinion *Springdale School Dist. v. Grace*, 494 F.Supp. 266 (1980).

6. Affirmed by the Second Circuit in an unpublished opinion filed July 17, 1980. In its opinion the Court of Appeals holds that the district court's opinion was clearly supported by a preponderance of the evidence. Further, the court notes that since the case was not a class action its holding is limited to the facts of the case.

The *Rowley* standard provides the handicapped child with the opportunity to achieve her full potential but takes into account that such a task is equally fair and feasible only to the extent that such opportunity must be commensurate with the opportunity granted to nonhandicapped in the same system. The district court noted, as did the court in *Rowley, supra* at 534, and we are greatly swayed by it, that:

> The school provides the nonhandicapped child an opportunity to learn the basics and to learn them well enough so that he might excel in his secondary courses. But the Springdale school does not turn every one of its students into academicians or professionals, or even successful secondary students. The home life of the child, his parents' interests and the child's cultural and sociological environment often determine the child's academic success and attainment or lack of such.

*Springdale School Dist. v. Grace, supra* at 272. Sherry will be receiving instruction in reading, arithmetic, spelling, telling of time, health, social sciences and art by a certified teacher of the deaf along with instruction in manual communication, lip reading, writing and speaking. As the district court observed, although it is likely that Sherry could learn more quickly at the School for the Deaf, both schools would be teaching her through certified teachers of the deaf. The fact that Sherry may not, like many nonhandicapped children, reach her full potential is not due to any error in the district court's interpretation of the Act or its finding that the Springdale School could appropriately educate Sherry, but instead may well result from forces outside the school environment. The Act cannot remedy a child's cultural and sociological environment nor force parents, by threatening to remove the child from the home, to become partners with the state in insuring that a child reach her full potential. We therefore agree with the district court that Sherry will be offered, through the extra services provided, an opportunity to achieve her full potential commensurate with the opportunity offered to all the Springdale School students and thus will receive an appropriate education at the Springdale School.[7]

Our holding today is further supported by the mainstreaming requirements of the Act. Sections 1412(5)(B) and 1414(a)(1)(C)(iv) of the Act require that "to the maximum extent" possible, without sacrificing the child's right to an appropriate education, the handicapped must be educated with the nonhandicapped. The regulations required that the handicapped child not only be educated as close to home as possible, but also that when possible the child should be educated in the school which he or she would attend if not handicapped.[8] At the Springdale School Sherry would be with nonhandicapped children for physical education, library, and possibly penmanship, science, health, social studies, music and art. At the School for the Deaf, however, Sherry would have virtually no contact with nonhandicapped children. Although Sherry's case does appear to be one in which an institu-

---

7. As was noted by the district court Sherry's parents have made very little effort themselves to learn to communicate with Sherry.

8. 45 C.F.R. section 121a.513(b) provides that Each public agency shall insure:
(1) That to the maximum extent appropriate, handicapped children, ... are educated with children who are not handicapped....
45 C.F.R. section 121a.551 provides assurance that
(a) Each handicapped child's educational placement:
(1) Is determined at least annually;
(2) Is based on his or her individualized education program, and
(3) Is as close as possible to the child's home;

. . . . .

(c) Unless a handicapped child's individualized education program requires some other arrangement, the child is educated in the school which he or she would attend if not handicapped....
The only exception to the above requirements is "when the nature of or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. section 1412(5)(B); 45 C.F.R. section 121a.513(b)(2). Since we hold that Sherry can, with the use of supplemental services, receive an appropriate education at the Springdale School the above exception would be inapplicable.

tion would better serve her needs, the Act's requirements are clear. The district court properly found that Sherry can receive an appropriate education at the Springdale School which also allows her to be educated with nonhandicapped students.

The Springdale School's final allegation of error on the part of the district court involves the district court's refusal to consider Arkansas law as it applies to this controversy. We find this argument to be without merit. The complaint filed by the Springdale School sought review, under section 1415(e) of the Act, of the administrative proceedings provided for under the Act. The applicable law and standards set forth thereunder are federal, and the district court was not required to apply state law. If every state had a different standard for determining "appropriate", the needs of some handicapped children "may not be adequately met if the local programs are measured against a statutory goal which is permitted to vary with the happenstance of the state in which the child lives." *Battle v. Com. of Pa.*, 629 F.2d 269, 284 (3d Cir. 1980) (Sloviter, Circuit Judge, dissenting). The district court was not incorrect in limiting its review to the applicable federal law.

Affirmed.